IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE APPLICATION OF | § | |
| BANCA PUEYO S.A. ET AL. | § | |
| FOR AN ORDER TO TAKE DISCOVERY | § | CASE NO. 3:18-mc-00100-M |
| FOR USE IN FOREIGN PROCEEDINGS | § | |
| PURSUANT TO 28 U.S.C. § 1782 | § | |

## <u>ORDER</u>

Following the Fifth Circuit's reversal and remand of this Court's earlier decisions, Lone Star Fund IX (U.S.), L.P. ("LSFIX"), Lone Star Global Acquisitions, LLC ("LSGA"), and Hudson Advisors, L.P. ("Hudson Advisors," and together with LSFIX and LSGA, "Respondents") filed a Renewed Motion to Reconsider Order on Petitioners' Ex Parte § 1782 Application and to Quash Subpoenas (ECF No. 121). For the reasons explained below, the Court DENIES the Motion and ORDERS Respondents to comply with the subpoenas, as modified by the Court.

### Background

This discovery dispute arises in the context of an ongoing attempt by Petitioners[1] Banca Pueyo SA, Banco BIC Português SA ("EuroBIC"), Banco Bilbao Vizcaya Argentaria SA ("BBVA"), BlackRock, Inc., Carlson Capital LP, CQS (UK) LLP, DNCA Finance, Pacific Investment Management Co. LLC ("PIMCO") TwentyFour Asset Management LLC ("TFAM"), VR-Bank Rhein Sieg-eG ("VR Bank"), and Weiss Multi-Strategy Advisors LLC (collectively, "Petitioners") to obtain information and materials for use in legal proceedings pending in Portugal.

---

[1] Originally, this miscellaneous civil action included additional Petitioners River Birch Capital LLC and York Capital Management Global Advisors, who have since voluntarily withdrawn from the case. *See* Nots. Dismissal (ECF Nos. 87 & 102).

1

The following facts are drawn from the parties' briefs and are set forth for background purposes only.[2]

I. Factual Background

In 2014, one of Portugal's largest banks, Banco Espirito Santo, S.A., (BES), faced financial distress and risked defaulting on its obligations. In order to avoid default, Banco de Portugal (BdP), the central bank of the Portuguese Republic, took certain "resolution measures" (the "BES Resolution") in coordination with the Fundo de Resolução (the "Resolution Fund"). Mot. Reconsider 8 (ECF No. 121) (citing 2018 Duarte Decl. (ECF No. 4)). As part of the BES Resolution, BdP established Novo Banco, SA and transferred certain assets formerly held by BES to Novo Banco. *Id*. In December 2014, after this asset transfer, BdP and the Resolution Fund started the process of selling Novo Banco, but halted it in September 2015. *Id*. (citing 2018 Calamari Decl. (ECF No. 3)). Instead of selling Novo Banco, BdP informed the market that it had transferred back to BES certain of the notes that had previously been transferred from BES to Novo Banco (the "Retransfer Decision"). *Id*. Then, in 2016, BdP again began the process of selling Novo Banco, which it completed in March 2017 when Nani Holdings, SGPS, SA purchased 75% of Novo Banco (the "Acquisition"). *Id*. at 9–10. Petitioners are "investors in bonds issued by [BES]" and "have grave concerns about both the Retransfer Decision and the [Acquisition], as well as the facts and circumstances surrounding them." Original Ex Parte App. 6–7 (ECF No. 2).

Respondents in this case—LSGA, LSFIX, and Hudson Advisors—maintain that they "had little to no involvement in any of the BES Resolution, the Retransfer Decision, or the Acquisition." *Id*. at 11. LSGA was not formed until December 5, 2017—after the Acquisition. *Id*. LSFIX is one

---

[2] The facts are also set forth in previous court orders, *see* November 2019 Order (ECF No. 33); September 2020 Order (ECF No. 75), but the parties' versions of the facts are detailed here to accurately reflect the most recent submissions.

of three entities that together comprise a private equity fund known as Lone Star Fund IX, and it has no employees, office space, or physical assets. *Id*. LSFIX owns an indirect 14% ownership interest in Nani Holdings, which owns 75% of Novo Banco. *Id*. Finally, Respondents assert that Hudson Advisors' only involvement with the underlying events was to perform various minor legal support functions for the Acquisition and prepare a memorandum for Lone Star Fund IX's investment committee concerning the financial merits of Nani Holdings' potential investment in Novo Banco. *Id*. at 11–12.

In March and April 2016, 65 plaintiffs initiated five administrative proceedings against BdP in the Lisbon Circuit Administrative Court to challenge the 2015 Retransfer Decision (the "Retransfer Actions"). *Id*. at 9. BdP is the public/governmental defendant in the Retransfer Actions and BES, Novo Banco, and the Resolution Fund are counter interested parties. *Id*. Petitioners Banca Pueyo SA, BIC, BBVA, DNCA, PIMCO, TFAM, VR Bank, and Weiss are all plaintiffs in the Retransfer Actions, but BlackRock, Carlson, and CQS are not plaintiffs. *Id*. Plaintiffs in the Retransfer Actions have sent discovery requests to BdP and Novo Banco, which at this time are still pending—BdP's compliance is "the subject of ongoing litigation in the Retransfer Actions," while Novo Banco has yet to respond, and the Portuguese courts have not made any rulings on the admissibility of the evidence sought or the merits of the discovery requests. *Id*.

In June 2017, 24 plaintiffs initiated another set of actions against BdP in the Lisbon Circuit Administrative Court to challenge the decision to allow Nani Holdings to acquire 75% of Novo Banco (the "Acquisition Actions"). *Id*. at 10. BdP and the Resolution Fund are governmental defendants in those actions and Novo Banco, Nani Holdings, LSFIX, Lone Star Fund IX (Bermuda) LP, and Lone Star Fund IX Parallel (Bermuda), LP are counter interested parties. *Id*. BdP "has made certain information available to the Lisbon Circuit Administrative Court in these

actions," but "whether BdP is required to provide further discovery is the subject of ongoing litigation in the Acquisition Actions." *Id.*

II. Procedural Background

As with the factual background, the procedural background of this miscellaneous civil action is well documented in this Court's orders and the parties' briefing—this represents the Court's fourth decision on this matter. To summarize, Petitioners filed their original ex parte Section 1782(a) Application in December 2018, and the Court granted it, authorizing Petitioners to serve subpoenas on Respondents. *See* January 2019 Order (ECF No. 12). Shortly after, Respondents moved to quash the subpoenas and asked the Court to reconsider its order granting Petitioners' original ex parte Section 1782(a) Application. *See* First Mot. Quash (ECF No. 20). The Court concluded that Fed. R. Civ. P. 45 was the proper vehicle for challenging the January 2019 Order granting the ex parte Application and denied the motion on Rule 45 grounds. *See* November 2019 Order (ECF No. 33). The Court briefly discussed Section 1782(a)'s statutory requirements, but declined to reconsider the discretionary factors. *See id.* at 20. The Court also ordered the parties to meaningfully confer in an attempt to resolve the discovery dispute, but allowed Respondents to file another motion to quash under Rule 45 if any specific objections remained after the conference. *Id.* at 21.

The parties did not reach a resolution at the conference, and Respondents renewed their motion to quash the subpoenas on January 31, 2020. *See* Second Mot. Quash (ECF No. 56). Relying on Rule 45, the Court granted the motion in part and denied the motion in part, limiting the scope of the discovery requests accordingly. *See* September 2020 Order (ECF No. 75). Soon after, Petitioners moved the Court to clarify its September 2020 Order, which the Court did—stating that "The Court clarifies that Respondents need not produce any discovery that has already

been produced or withheld or redacted on the basis of privilege in the Portuguese litigation." *See* April 2021 Order (ECF No. 88).

Respondents initially appealed this Court's Section 1782(a) orders in early January 2020, by filing a notice of appeal to the Fifth Circuit of the January 2019 and November 2019 Orders. *See* Not. Appeal (ECF No. 33). The Fifth Circuit ultimately dismissed the appeal as premature. *See* Resp. 10 (ECF No. 128). However, in July 2021, after the Court denied their renewed motion to quash, Respondents renewed their appeals to the Fifth Circuit of the Court's Section 1782(a) and Rule 45 Orders[3] (ECF Nos. 12, 33, 42, 75, 88, and 94). *See* Second Not. Appeal (ECF No. 97). The Fifth Circuit reversed and remanded this Court's Section 1782(a) orders, holding that the Court should have allowed full adversarial testing of Petitioners' Section 1782(a) Application. *See* Order USCA (ECF No. 110).

Now, Respondents have once more renewed their motion to reconsider the Order granting Petitioners' ex parte Section 1782(a) Application. *See* Mot. Reconsider. The motion is fully briefed, with Petitioners filing a Response (ECF No. 128), Respondents filing a Reply (ECF No. 129), and Petitioners filing a Surreply (ECF No. 132). Respondents also raise several evidentiary objections to various of Petitioners' declarations filed throughout the litigation. These objections have also been fully briefed. *See* Obj. Decls. (ECF Nos. 122–126); Omnibus Resp. (ECF No. 127); Reply ISO Obj. Decls. (ECF Nos. 130 & 131).

### Legal Standard

"Section 1782(a) seeks to facilitate third-party discovery in American district courts from subjects that reside or are found in the district, in aid of interested parties in foreign proceedings."

---

[3] At various points throughout the litigation, Respondents also objected to the findings of the United States Magistrate Judge, which this Court overruled. Respondents included these orders in their appeal to the Fifth Circuit. *See* Second Not. Appeal (ECF No. 97).

*Banca Pueyo SA v. Lone Star Fund IX (US) L.P.*, 55 F. 4ᵗʰ 469, 473 (5th Cir. 2022). In relevant

part, the statute provides:

> The district court of the district in which a person resides or is found may
> order him to give his testimony or statement or to produce a document or
> other thing for use in a proceeding in a [foreign tribunal]      The order may
> be made pursuant to a letter rogatory issued, or request made, by a [foreign
> tribunal] or upon the application of any interested person.

28 U.S.C. § 1782(a). There are three statutory requirements that must be satisfied before a district

court may grant assistance under Section 1782(a): (1) the person from whom discovery is sought

must reside or be found in the district in which the application is filed; (2) the discovery must be

for use in a proceeding before a foreign tribunal; and (3) the application must be made by a foreign

or international tribunal or any interested person. *Bravo Express Corp. v. Total Petrochemicals &*

*Ref. U.S.*, 613 F. App'x 319, 322 (5th Cir. 2015) (internal quotations omitted).

  However, the district courts may exercise discretion in granting requests for discovery

under Section 1782(a). The Supreme Court has held that district courts should consider the

following factors, known as the *Intel* factors, in exercising their discretion: "(1) whether the person

from whom discovery is sought is a participant in the foreign proceeding, since nonparticipants in

the foreign proceeding may be outside the foreign tribunal's jurisdictional reach and therefore their

evidence may be unobtainable absent § 1782(a) aid, (2) the nature of the foreign tribunal, the

character of the proceedings underway abroad, and the receptivity of the foreign government or

the court or agency abroad to U.S. federal-court judicial assistance, (3) whether the § 1782(a)

request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of

a foreign country or the United States, and (4) whether the § 1782(a) request is unduly intrusive

or burdensome." *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 376 n.3 (5th Cir. 2020)

(quoting *Intel Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004)) (internal quotations omitted).

It is not unusual for Section 1782(a) applications to be made initially on an ex parte basis to the district courts, but respondents have a right to challenge an order's validity pursuant to the statutory requirements and the *Intel* factors. *Banca Pueyo SA*, 55 F.4th at 475.

Analysis

I.   Respondents' Preliminary Evidentiary Objections

Respondents make several evidentiary objections (ECF Nos. 122–26) to (1) the 2018 Declaration of Diogo Duarte de Campos (ECF No. 4), (2) the 2018 Declaration of Peter Calamari (ECF No. 3), (2) the Declaration of Atholl Wilton (ECF No. 27-14), (4) the Declaration of Stephen Ahrens (ECF No. 27-1), and (5) the Declaration of Joseph Brucchieri (ECF No. 27-4). Respondents argue that, among other contentions, the Declarations are not based on personal knowledge, include inadmissible hearsay evidence, and contain statements that constitute improper legal conclusions. Respondents base each of their objections to these various declarations on the Federal Rules of Evidence. *See, e.g.*, Obj. to Calamari Decl. ¶ 2 (ECF No. 123) (citing Fed. R. Evid. 801, 802); Obj. to Ahrens Decl. ¶ 1 (ECF No. 125) (citing Fed. R. Evid. 601, 701, 702).

The parties dispute whether the Federal Rules of Evidence apply in a Section 1782(a) application. Petitioners argue that "the evidentiary requirements which apply at trial do not apply to pre-trial motions such as this one," Omnibus Resp. 3 n.3 (ECF No. 127), and that "Federal Rule of Evidence 1101(d)(3) is clear that the Rules of Evidence do not apply to miscellaneous proceedings," Omnibus Surreply 1 (ECF No. 133). Respondents attempt to rebut this position, positing that "Section 1782 Applications are akin to trials or dispositive motions rather than

standard pre-trial motions" and therefore that Petitioners should be required to follow the Federal Rules of Evidence. Reply ISO Obj. Duarte & Calamari Decls. 1–2 (ECF No. 130).

As a threshold matter, the evidence considered in this miscellaneous Section 1782(a) matter need not meet the strict requirements of admissibility set forth in the Federal Rules of Evidence, and therefore the objections are overruled. The Federal Rules of Evidence do not apply to every proceeding before the Court. The Rules themselves specify three exceptions, which are (1) the court's determination, under Rule 104(a), on a preliminary question of fact governing admissibility; (2) grand-jury proceedings; and (3) miscellaneous proceedings such as extradition, granting or revoking probation or supervised release, and sentencings. *See* Fed. R. Evid. 1101(d)(1)–(3). There are other pretrial matters, such as a request for preliminary injunctive relief or a motion for class certification, where courts may consider evidence that would be otherwise inadmissible at trial. *See Sec. and Ex. Comm'n v. Harris*, 2010 WL 11617971, at *1 (N.D. Tex. June 16, 2010) (considering hearsay evidence in a preliminary injunction proceeding); *Steward v. Janek*, 315 F.R.D. 472, 478 (W.D. Tex. 2016) (holding that the rules of evidence did not apply "in full force" at the class certification stage in part because the reports in question were not being offered as evidence of the merits of plaintiffs' claims, but rather to support their class certification motion). Here, as in *Steward*, there are no concerns about possible hearsay or otherwise inadmissible evidence reaching the ears of a jury or affecting the merits of Petitioners' claims in Portuguese court. Indeed, contrary to Respondents' argument that Section 1782(a) applications "are akin to trials or dispositive motions" and therefore that the Federal Rules of Evidence must apply, in Section 1782(a) proceedings, "the litigation on the merits occurs in a foreign tribunal," not the district court. *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 560 (7th Cir. 2018). The concerns motivating the strict admissibility requirements of the Rules are not present here.

Further, Respondents have not cited a case where the Federal Rules of Evidence excluded consideration of potentially inadmissible evidence on a Section 1782(a) application. Without clear guidance on whether the Federal Rules of Evidence apply in this context, the Court concludes that this matter is more like a motion for class certification or request for preliminary injunctive relief, which do not involve merits determinations or juries, and where a court may consider evidence otherwise inadmissible at trial. For this reason, the evidence offered by both parties need not meet the exacting admissibility standards of the Federal Rules of Evidence. Because they are premised on the Federal Rules of Evidence, Respondents' objections[4] are OVERRULED.

II.    Petitioners' Section 1782(a) Application

A. Statutory Prerequisites

A court's analysis of a Section 1782(a) application is twofold. Before moving to the discretionary *Intel* factors, a court must evaluate whether the statutory prerequisites for granting relief are satisfied. *Bravo Express Corp.*, 613 F. App'x at 322. The statutory requirements are (1) the person from whom discovery is sought must reside or be found in the district where the application is filed; (2) the discovery must be for use in a proceeding before a foreign tribunal; and (3) the application must be made by a foreign or international tribunal or any interested person. *Id.* Here, only the second and third statutory requirements are in dispute. The Court will first address the Petitioners' status as "interested persons" and then address whether the discovery is "for use" in a proceeding before a foreign tribunal, as the parties briefed the issues in that order, and the Supreme Court analyzed them in that order in *Intel*. *See Intel*, 542 U.S. 256–58.

---

[4] While Petitioners frame Respondents' objections as Motions to Strike, *see generally* Omnibus Resp., Respondents are clear that they "are asserting evidentiary objections under the Federal Rules of Evidence." *See* Reply ISO Obj. Duarte & Calamari Decls. 2 n.1. Whether the Court frames the objections as requests to strike or evidentiary objections does not change its conclusion that the objections should be overruled.

Here, carefully considering the parties' briefing and the record as a whole, the Court concludes that Petitioners' Section 1782(a) Application meets the statutory requirements.

      1.  <u>All Petitioners qualify as "interested persons" in the Retransfer Actions for purposes of Section 1782(a).</u>

Before a district court may grant assistance under Section 1782(a), the court must be sure that the application was made by "a foreign or international tribunal" or "any interested person." 28 U.S.C. § 1728(a). The Supreme Court has made clear that "interested person" under the statute plainly reaches beyond the universe of persons designated "litigant." *Intel*, 542 U.S. at 256. Beyond litigants in the foreign proceedings, an "interested person" is an individual with a significant role in the process who has a reasonable interest in obtaining judicial assistance. *Id.*

      *a.  Litigants in the Retransfer Actions are interested persons in those actions.*

First, the Petitioners who are plaintiffs in the Retransfer Actions qualify as "interested persons" for the purposes of Section 1782(a). *Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the interested persons who may invoke [Section] 1782") (internal quotations omitted); Mot. Reconsider 14; Resp. 12. These Petitioners— Banca Pueyo, EuroBIC, BBVA, DNCA, PIMCO, TFAM, VR Bank, and Weiss—are interested persons in the Retransfer Actions due to their status as litigants in those proceedings. *See generally* 2023 Duarte Decl. (ECF No. 128-1) (listing the Petitioners and the Retransfer Action to which each is a party).

      *b.  BlackRock, Carlson, and CQS are interested persons in the Retransfer Actions as agents of their respective funds.*

As for the remaining Petitioners—BlackRock, Carlson, and CQS—the Court must evaluate whether they qualify as "interested persons" in the Retransfer Actions despite their status as non-parties. In their original ex parte Application, Petitioners explained that "in the case of [BlackRock,

Carlson, and CQS], the investments are in fact held by, and the foreign proceedings described herein are being pursued by, discrete investment funds under the management, advice, and/or control of the Petitioners." Original Ex Parte App. 6 n.2. Certain of BlackRock and CQS's funds are parties to both the Retransfer Actions and the Acquisition Actions, and two of Carlson's funds are parties to the Retransfer Actions. *See* 2023 Duarte Decl. ¶¶ 14–16. Representatives of BlackRock, Carlson, and CQS have each testified that these Petitioners are agents of their respective funds for purposes of the Section 1782(a) proceedings, with control over any evidence the funds introduce into the Portuguese proceedings. *See generally* Ahrens Decl. (on behalf of BlackRock); Brucchieri Decl. (on behalf of Carlson); Wilton Decl. (on behalf of CQS). But in their Motion to Reconsider, Respondents urge the Court that these three Petitioners are not interested persons because, for one, they are not parties to any of the Portuguese proceedings, and further because the agency relationships with their respective funds, if any, are not enough to grant interested person status. Mot. Reconsider 15.

Courts have recognized that a non-party to a proceeding may still be an interested person in that proceeding for Section 1782(a) purposes through its agency relationship with a party. *See Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015) ("[A]n established right to provide evidence and have the party consider it, . . . or a recognized relationship, such as that of an agent and principal . . . may be sufficient to make an otherwise stranger to the proceeding an 'interested person.'"); *In re Schlich*, 2016 WL 7209565, at *3 (D. Mass. Dec. 9, 2016) ("Schlich, as an agent for Intellia, is a party to that proceeding and therefore qualifies as an 'interested person' for the purposes of this § 1782 petition."), *aff'd*, 893 F.3d 40 (1st Cir. 2018); *Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) ("[I]t is plain that as petitioner in the present action, Lancaster is agent for Laborvetro's trustee in

11

bankruptcy, pursuing assets of the debtor, on behalf of the debtor. By virtue of that agency and its status as principal, Lancaster is an interested person within the meaning of § 1782"). And indeed, in *Intel*, the Supreme Court included the right to submit information for the foreign tribunal's consideration as a factor in its analysis of whether and when a non-party qualifies as an interested person. *See Intel*, 542 U.S. at 256.

The Court is persuaded that BlackRock, Carlson, and CQS have established that they are agents of their respective funds, and therefore that they are properly considered "interested persons" in the Retransfer Actions. The declarations submitted by Petitioners make it clear that BlackRock, Carlson, and CQS have control over the evidence their respective funds introduce into the Retransfer Actions. *See* 2023 Duarte Decl. ¶¶14–16. BlackRock, Carlson, and CQS have each retained law firms to prosecute the Retransfer Actions on behalf of the funds. *See id*. According to declarations by legal officers for BlackRock, Carlson, and CQS, the respective Petitioner itself or its wholly owned advisory affiliates have been appointed investment manager or investment advisor of the funds that are parties to the Retransfer Actions. *See* Ahrens Decl. ¶¶ 3–4; Wilton Decl. ¶ 3; Brucchieri Decl. ¶ 3. As "the essential element of an agency relationship is the right of control," BlackRock, Carlson, and CQS have established that they have agency relationships over the respective funds that are parties to the Retransfer Actions. *ADT, LLC v. Capital Connect, Inc.*, 145 F.Supp.3d 671, 692 (N.D. Tex. 2015).

Though Respondents take issue with the case law cited by Petitioners, *see* Reply 7, the Court agrees that the principles expressed in those cases apply to the facts at hand here. Like the petitioners in *Intel*, BlackRock, Carlson, and CQS have participation rights in the Retransfer Actions through their abilities as agents to dictate which evidence the funds submit for the foreign tribunal's consideration. *See Intel*, 542 U.S. at 256. And like the petitioners in *Lancaster Factoring*

12

*Co.*, BlackRock, Carlson, and CQS are pursuing legal action *on behalf* of the funds, having retained counsel to do so. *See Lancaster Factoring Co.*, 90 F.3d at 42. The participant funds are managed either by the Petitioners themselves or by wholly owned affiliates of the Petitioners, similar to the corporate relationships in the *Oxus Gold PLC* case that granted those petitioners interested person status. *See In re Matter of App. of Oxus Gold PLC*, 2006 WL 2927615, at *6–7 (D.N.J. Oct. 11, 2006). And beyond highlighting factual distinctions in the cases, Respondents have not provided any case law of their own supporting the argument that such an agency relationship is *not* enough to make Petitioners interested persons. On the whole, the relationships of control between these Petitioners and the participant funds give Petitioners "a significant role in the process" and "a reasonable interest in obtaining the assistance," enough to make them interested persons in the Retransfer Actions. *Intel*, 542 U.S. at 256–57.

The Court therefore concludes that BlackRock, Carlson, and CQS are interested persons in the Retransfer Actions as agents of their respective funds, and the remaining Petitioners are interested persons in the Retransfer Actions by way of their status as litigants.

### 2. BlackRock, CQS, and DNCA qualify as interested persons in the Acquisition Actions for purposes Section 1782(a).

Petitioners do not argue that Banca Pueyo, EuroBIC, BBVA, PIMCO, TFAM, VRBank, or Weiss are interested persons in the Acquisition Actions—the only Petitioners in dispute are BlackRock, CQS, and DNCA. *See* Resp. 15–16. For the same reasons explained in Section II.A.1.b above, BlackRock and CQS are interested persons in the Acquisition Actions due to their roles as agents of their respective funds involved in the proceedings.[5] *See* 2023 Duarte Decl. ¶¶ 15–16

---

[5] The parties have filed declarations updating the Court on the status of the Acquisition Actions. *See* 2023 Pinheiro Decl. (ECF No 121-1); 2023 Duarte Decl. The Court understands that the Acquisition Action to which a CQS fund is a party has been dismissed for a lack of standing and that CQS intends to appeal that decision. *See* 2023 Duarte Decl. ¶ 16(b).

(explaining that funds controlled by BlackRock and CQS are parties to both the Retransfer Actions and the Acquisition Actions). Finally, DNCA is an interested person in the Acquisition Actions by way of its status as a party. *See* Reply 8 n.3 (informing the Court that the Portuguese court has re-named DNCA as a party to the appeal of the Acquisition Action's dismissal for lack of standing). The fact that some of the Acquisition Actions are currently or soon to be appealed does not change the conclusion that CQS and DNCA are interested persons. The touchstones of interested person status expressed in *Intel*—a significant role in the process with a reasonable interest in obtaining the assistance—are still present as the parties either prepare or argue their appeals. *Intel*, 542 U.S. at 256; *see also App. of Furstenberg Fin. SAS v. Litai Assets LLC*, 877 F.3d 1031, 1035 (11th Cir. 2017) (holding that an applicant was an interested person within the meaning of Section 1782(a) in part because the parties had the right to appeal an unfavorable ruling).

In its opinion ordering remand, the Fifth Circuit cautioned that "discovery pertinent to one of the proceedings should not be indiscriminately doled out to the parties to the other proceeding." *Banca Pueyo SA*, 55 F.4th at 476. Here, the Court has determined that all Petitioners are interested persons in the Retransfer Actions. However, the Court appreciates the concern that by authorizing Petitioners' Section 1782(a) Application, certain Petitioners that are not interested persons in the Acquisition Actions may receive discovery that will later be used only in the Acquisition Actions, that said, as discussed more fully in the analysis below, the Court is satisfied that the discovery sought, on the whole, is pertinent to all Portuguese proceedings—and for that reason, it is unnecessary here for the Court to shield certain Petitioners from certain discovery that may eventually be used in one or both of the Portuguese proceedings. Because the discovery is generally pertinent to the Retransfer Actions, and all Petitioners are interested persons in the Retransfer

14

Actions, granting Petitioners' Application will not result in discovery being "indiscriminately doled out."

    <u>3. The discovery is "for use" in a proceeding before a foreign tribunal.</u>

    The parties also disagree on whether the discovery Petitioners seek is "for use" in the Portuguese proceedings. Before a court may grant a discovery request under Section 1782(a), it must ensure that the requested information is "for use" in a proceeding before a foreign tribunal. 28 U.S.C. § 1782(a). To do so, courts look at the practical ability of the interested person to place the discovery before the tribunal, rather than the strength of the interested person's interest in the proceeding or the necessity of the discovery to success on the merits. *See In re Empresa Publica de Hidrocarburos Del Equador – EP Petroecuador v. WorleyParsons Int'l, Inc.*, 2020 WL 13412872, at *4 (S.D. Tex. April 13, 2020) (rejecting respondent's argument that the "for use" requirement required a showing of relevance or necessity and citing the Fifth Circuit's decision in *Bravo Express*); s*ee also Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) ("[D]iscovery sought pursuant to § 1782 need not be necessary for the party to prevail in the foreign proceeding in order to satisfy the statute's 'for use' requirement"); *see also KPMG*, 789 F.3d at 120 ("Without some means of injecting the evidence into the proceeding, a § 1782 applicant cannot show that it has a role in the proceeding, such that it may 'use' the information, or as we have recently said, employ it with some advantage") (internal quotations omitted).

    Further, the Fifth Circuit has explained that the statute does not require a foreign proceeding to be currently pending before an applicant seeks discovery; the statute only requires the foreign proceeding to be in "reasonable contemplation." *Bravo Express Corp.*, 613 F. App'x at 322 (citing *Intel*, 542 U.S. at 258). The Court in *Bravo Express* concluded that the Section 1782(a) applicant satisfied the "for use" requirement by establishing that the foreign proceeding

was in reasonable contemplation based on sworn affidavits from the applicant's counsel. *See id.* at 323.

Here, Respondents urge the Court that the majority of the discovery Petitioners seek is actually for use in the Acquisition Actions, not the Retransfer Actions. In Respondents' view, the discovery is therefore not available under Section 1782(a) because it will not be relevant to the Retransfer Actions, which is the action to which Petitioners are interested persons. *See* Mot. Reconsider 15–16; Reply 8–9. According to Respondents, the only interested person in an Acquisition Action is DNCA, and the current status of the Action—pending on appeal—means that DNCA cannot use the discovery sought. *See* Mot. Reconsider 15–17; Reply 8–10. Petitioners respond that the Retransfer Actions and the Acquisition Actions are closely intertwined, and the discovery sought relates to and is for use in both proceedings. Resp. at 16–17.

First, as discussed above, the Court concludes that all Petitioners are interested persons in the Retransfer Actions, and that BlackRock, CQS, and DNCA are all interested persons in the Acquisition Actions. Therefore, presumably, all Petitioners request the discovery "for use" in the Retransfer Actions, and BlackRock, CQS, and DNCA request the discovery "for use" in the Acquisition Actions as well as the Retransfer Actions.

The crux of Respondents' argument that the discovery requests do not satisfy the "for use" statutory requirement is that the information Petitioners seek in document requests 3–8 and deposition topics 3–10 is not relevant to the Retransfer Actions and instead relates solely to the Acquisition Actions initiated a few years later. Mot. Reconsider 17. In other words, Respondents argue, the discovery cannot be "for use" in the Retransfer Actions because it is not relevant to those actions. Respondents base this assertion on Peter Calamari's 2018 declaration, which

describes the various document requests and their relevance with reference mostly to the Acquisition Actions. *See* 2018 Calamari Decl. 17–29.

While the text of Section 1782(a) is clear that the discovery should be for use in the proceeding in which the applicant is an interested person, Respondents have cited no cases, and the Court is aware of none, that require a Court to conduct a full-scale relevance analysis on the various document requests and deposition topics in order to determine whether they are "for use" in that foreign proceeding. To the contrary, the key inquiry articulated by the cases, and indeed the cases cited by Respondents, is whether the interested person has a practical ability to offer the evidence "to some advantage." *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017).

Here, the Court is satisfied that the Petitioners, all interested persons in the Retransfer Action, have a practical ability to offer the requested discovery "to some advantage" in that proceeding. Diego Duarte has explained in his declarations that in the Retransfer Actions, Petitioners allege that the Retransfer Decision was made in part to make Novo Banco a more attractive prospect for its later acquisition by Respondents. 2023 Duarte Decl. ¶ 28–30. Days after the Retransfer Decision, BdP reinstated the sales process for Novo Banco, with sales guidelines that disqualified any interested investor who had brought proceedings to challenge the Retransfer Decision. 2018 Duarte Decl. ¶ 16–18. Discovery related to the acquisition of Novo Banco by Lone Star shortly after the Retransfer Decision could therefore be employed to some advantage in the Retransfer Actions for Petitioner's argument that the Retransfer Decision was improper. 2023 Duarte Decl. ¶ 30. ("[T]he documents related to the acquisition of Novo Banco could presumably demonstrate the connection between the Retransfer Decision and the acquisition proceedings, namely the referred intentionality of the Retransfer Decision, including the marketability after the

retransfer, disclosures made through due diligence, and information relating to damages"); *In re Accent Delight Int'l Ltd.*, 869 F.3d at 132–33 ("What is more, and notwithstanding Bouvier's assertion to the contrary, Petitioners' introduction of the discovery would be to their advantage and serve some use if it tends to prove Bouvier's alleged fraud against them").

Further, Petitioners have identified that the requested discovery can be injected into the proceedings. *See In re Empresa Publica de Hidrocarburos Del Equador – EP Petroecuador*, 2020 WL 13412872, at *4. There are currently three pending Retransfer Actions involving Petitioners in which no final hearing has been scheduled, and parties may submit new evidence up to 20 days before the day of the final hearing. *See* 2023 Duarte Decl. ¶ 32. Even after this deadline, submission of new documents is allowed if submission has become necessary due to a subsequent occurrence or submission was not possible before the deadline. *Id.* Petitioners, as interested persons in the Retransfer Actions with control over the evidence submitted, therefore retain "some means of injecting the evidence into the proceeding . . . such that [they] may 'use' the information." *KPMG*, 798 F.3d at 120.

Similarly, BlackRock, CQS, and DNCA, as interested persons in the Acquisition Actions, have the practical ability to offer the requested discovery to the tribunal to some advantage in that proceeding. The Fifth Circuit is clear that the foreign proceeding need only be "in reasonable contemplation" in order for discovery to be "for use" in that proceeding. *Bravo Express*, 613 F. App'x at 322. The Court may grant Section 1782(a) assistance based on "reliable indications of the likelihood that foreign proceedings will be instituted within a reasonable time." *LEG Q LLC*, 2017 WL 3780213, at *6 (quoting *Bravo Express*, 613 F. App'x at 322–23). Here, CQS and DNCA's appeals in the Acquisition Actions are either pending or will be instituted within a reasonable amount of time. *See* 2023 Duarte Decl. ¶¶ 9, 16(b). And the Acquisition Action to

which BlackRock is an interested person is at the same stage as the Retransfer Actions, in that BlackRock still has the practical ability to submit new evidence. Therefore, the Section 1782(a) evidence requested here will be "for use" in that proceeding. *See id.* at ¶ 15(b).

Finally, Respondents argue that the Section 1782(a) Application fails the "for use" requirement because the requested discovery is "so unlikely to be used that its burdens outweigh its benefits." Reply 8. Respondents write that Petitioners "should not be permitted to go on a fishing expedition through any and all documents and communications relating to the Acquisition," and that "the Supreme Court has made clear that unduly intrusive or burdensome requests may be rejected or trimmed." *Id.* (internal quotations omitted). However, the undue burden question plays no role in the analysis of whether the Application meets Section 1782(a)'s "for use" requirement. Indeed, the cases Respondents rely on do not assess burden in their analysis of the "for use" requirement, and the quotations Respondents include come from the sections analyzing the discretionary factors, not the "for use" requirement. *financialright GmbH v. Robert Bosch LLC*, 294 F. Supp. 3d 721, 739 (E.D. Mich. 2018) ("*Robert Bosch LLC*") (assessing the burden imposed by the discovery requests as part of the fourth *Intel* factor, not the "for use" statutory requirement); *Intel*, 542 U.S. at 265 (same). The question of undue burden or intrusiveness is properly reserved for another part of the analysis.

In sum, Petitioners' Section 1782(a) Application meets the statutory prerequisites. Petitioners are interested persons in the Retransfer Actions (and in the case of some, in the Acquisition Actions as well) and the information sought is for use in the Retransfer Actions as well as the Acquisition Actions.

B. *Intel* Factors

Even though Petitioners' Section 1782(a) Application meets the statutory prerequisites, the Court may still exercise discretion in considering the discovery request. *Banca Pueyo SA*, 55 F.4th at 473. The Supreme Court has suggested the following factors to help assess whether to exercise this discretion: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding," since "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach" and therefore their evidence may be "unobtainable absent § 1782(a) aid," (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (iii) whether the Section 1782(a) request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (iv) whether the Section 1782(a) request is "unduly intrusive or burdensome." *Ecuadorian Plaintiffs*, 619 F.3d at 376 n.3 (quoting *Intel*, 542 U.S. at 264–65). Assessing each of these factors in turn, the Court concludes that they weigh in favor of granting Petitioners' Application.

1. The first discretionary factor favors Petitioners.

The first discretionary factor asks whether the person from whom discovery is sought is a participant in the foreign proceeding. *Intel*, 542 U.S. at 264. As the Supreme Court has observed, "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad . . . [i]n contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id*. However, "a respondent's connection to the foreign proceeding is part of a broader inquiry: whether the discovery is outside

the foreign tribunal's jurisdictional reach and thus unobtainable absent § 1782(a) aid." *LEG Q LLC v. RSR Corp.*, 2017 WL 3780213, at *8 (N.D. Tex. Aug. 31, 2017). Although "Section 1782 does not require an applicant to seek discovery in the foreign jurisdiction before seeking the assistance of a district court," *id.*, when the foreign tribunal would have the jurisdiction to compel all of the discovery requested, this factor weighs against granting relief under Section 1782(a). *See, e.g., MetaLab Design Ltd. v. Zozi Int'l, Inc.*, 2018 WL 368766, at *3 (N.D. Cal. Jan. 11, 2018). Even if the requested discovery is located in the foreign jurisdiction, when the foreign court does not have the power to compel production of the requested discovery, Section 1782(a) relief may be necessary. *See In re Thales Dis Ais Deutschland GmbH*, 2021 WL 7707268, at *2 (N.D. Tex. Nov. 5, 2021); *LEG Q LLC*, 2017 WL 3782013, at *8.

Here, the parties do not dispute that Respondents are nonparties to the Portuguese proceedings and are headquartered in Dallas, Texas. *See* 2018 Calamari Decl. ¶ 52. Instead, the parties debate whether the requested discovery is within the jurisdictional reach of the Portuguese tribunal. *See* Mot. Reconsider 19–20; Surreply 10. Specifically, Respondents urge the Court that all of the information Petitioners seek is held by parties to the Portuguese proceedings, namely BdP and the Resolution Fund, and therefore that the Portuguese court has jurisdiction to compel the production of those documents. *See* Mot. Reconsider 19. Petitioners respond that there is no exhaustion requirement to an application for discovery under Section 1782(a), and the party seeking discovery via Section 1782(a) need not first seek that same information from the foreign tribunal. *See* Resp. 18–19. Further, Respondents say, the fact that participants to the foreign proceeding may have access to some of the same materials does not mean that the Court cannot grant aid under Section 1782(a). *Id.*

To determine if this factor weighs in favor of granting the Section 1782(a) Application, the Court must undertake the "broader inquiry" of whether the discovery Petitioners seek is outside the Portuguese tribunal's jurisdictional reach. *See LEG Q LLC*, 3780213, at *8. Respondents insist that "all of [the] discovery either (1) is already the subject of ongoing litigation in Portugal or (2) could have, but has not yet, been sought in Portugal." Mot. Reconsider 19. In his declarations, Duarte states that "some of the documents requested in this Application have also been requested in connection with the [Portuguese proceedings]," but that BdP and the Resolution Fund produced only a limited number of documents, and further that "the scope of documents requested in the Section 1782 application is wider than the ones made before the Portuguese courts." 2018 Duarte Decl. ¶ 42; 2023 Duarte Decl. ¶ 20.

This factor is a close call. As the Fifth Circuit noted in its remanding opinion, it is clear that much of the discovery Petitioners request relates to Respondents' dealings with BdP, the Resolution Fund, and Novo Banco, all parties to the Portuguese proceedings, and indeed, that many of these documents have already been requested through the Portuguese litigation. *See* 2019 Pinheiro Decl. ¶¶ 7, 16 (ECF No. 20-2); 2018 Duarte Decl. ¶ 42; *Banca Pueyo SA*, 55 F.4th at 476 ("[The] uncontested facts suggest the possibility that [] some of the sought discovery is accessible currently in the foreign courts"). Further, Petitioners are not forthcoming in their briefing about which specific requests, in their view, lie beyond the reach of the Portuguese courts or are wider in scope than what they have already requested. Petitioners do note that the Portuguese tribunal does not have the authority to compel a deposition. *See* Surreply 10.

That said, upon examination of the briefing, the document requests and deposition topics, and the relevant case law, the Court is persuaded that this factor weighs slightly in favor of granting the Application. First, Respondents are not participants in the Portuguese proceedings—they are

Dallas, Texas based entities and beyond the jurisdiction of the Portuguese courts. While this does not end the inquiry, it counsels in favor of granting the Application. *See Eni Ghana Expl. And Prod. Ltd. v. Gaffney Cline & Assoc. Inc.*, 2022 WL 3156224, at *4 (S.D. Tex. Aug. 8, 2022) ("The fact that Respondents are not participants in the foreign proceedings militates in favor of Petitioners' request").

Second, while many of the requests relate to Respondents' dealings with BdP and the Resolution Fund—both parties to the Portuguese proceeding who may themselves possess some of the relevant information—the document requests and deposition topics also seek additional information specific to Respondents that the parties to the Portuguese proceedings would not be able to produce. For example, the deposition topics seek to elicit testimony as to *Respondents'* impressions, understanding, and analysis of the events giving rise to the claims. *See* 2018 Calamari Decl. Ex. 2 (ECF No. 3-1). Similarly, the document requests include requests for information specific to Respondents' plans, internal communications, and knowledge. *See, e.g.*, Request No. 5 (seeking "[Respondents'] plans to capitalize Novo Banco"; Request No. 4 (seeking "how [Respondent] identified Novo Banco as a potential investment target"); Request No. 2 (seeking "documents and communications relating to [Respondent] or any other person or entity's knowledge of the Retransfer Decision prior to its public announcement") (ECF No. 3); *see also* 2019 Duarte Decl. ¶ 48 ("[F]or example . . . Document Requests Nos. 7 and 8 in the Subpoena[] [request] documents relating to the background, motivations, limitations and potential alternatives considered to the liability management exercise that was eventually imposed on Novo Banco, the contingent capitalization mechanism eventually agreed to by the Resolution Fund and Novo Banco, or relating to other formal or informal commitments concerning the capitalization of Novo Banco and/or the Resolution Fund or other forms of indemnity, as well as concerning the

agreement by which Lone Star would only acquire a 75% stake in Novo Banco, while the Resolution Fund maintained 25% equity.")

While many of the document requests seek information sent to Respondents by BdP that may be in BdP's possession, the case law counsels that this is not grounds to deny the Section 1782(a) application when part of the request lies beyond the foreign court's reach. *See LEG Q LLC*, 2017 WL 3782013, at *9 ("As for Respondents' argument that [Applicant] can obtain the evidence it seeks from the European Commission or in domestic proceedings, the Court agrees … that this is legally irrelevant to the first discretionary factor's inquiry and that, even if [Applicant] could obtain the European Commission investigation file, it would not provide all that [Applicant] is seeking"); *In re Application of HydroDive Nigeria, Ltd.*, 2013 WL 12155021, *4 (S.D. Tex. May 29, 2013) ("While discovery from Sapiem and PetroCal may be available in Nigeria, Cal Dive is beyond the jurisdiction of the Nigerian tribunals. [Applicant] is not trying to 'pierce the corporate veil,' it is Cal Dive's information that [Applicant] seeks"); *Eni Ghana Expl. and Prod. Ltd.*, 2022 WL 3156224, at *4 ("[T]here is a party to the Ghanaian actions that has custody over some of the materials sought here. Still, Springfield did not produce the Gaffney Cline Report in the foreign actions, and there is no evidence that it has the other materials sought in Petitioners' Application").

On balance, because Petitioners request discovery from nonparticipants in the Portuguese proceedings, and Portuguese courts could not compel production of all the requested information, the first *Intel* factor weighs in favor of granting the Application.

2. The second discretionary factor favors Petitioners.

The second discretionary factor articulated in *Intel* allows a court presented with a Section 1782(a) request to consider "the nature of the foreign tribunal, the character of the proceedings

underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. In the Fifth Circuit, "to avoid speculative forays into legal territories unfamiliar to federal judges, parties must provide authoritative proof that a foreign tribunal would reject evidence because of a violation of an alleged foreign privilege." *Ecuadorian Plaintiffs*, 619 F.3d at 378. Courts should look for judicial, executive, or legislative declarations that clearly demonstrate that allowing discovery would offend the foreign tribunal's norms. *Id.*; *see also In re Thales Dis Ais Deutschland GmbH*, 2021 WL 7707268, at *3 (N.D. Tex. Nov. 5, 2021) ("[A] district court should deny discovery based on lack of receptiveness of the foreign tribunal only where it is provided with authoritative proof that the foreign tribunal would reject evidence obtained with the aid of § 1782"). The burden falls on Respondents to show the Court "a clear directive or authoritative proof that the [foreign tribunal] would reject evidence obtained with the aid of section 1782." *LEG Q LLC*, 2017 WL 3780213, at *9 (quoting *Ecuadorian Plaintiffs*, 619 F.3d at 378).

Here, Respondents argue that they have identified authoritative proof that shows that the ex parte depositions "are inadmissible in Portuguese courts absent the agreement of and participation by the parties to the Portuguese Proceedings." Mot. Reconsider 22. Respondents point to a declaration from Portuguese civil procedure expert Professor Paula Costa E Silva,[6] who states that both mechanisms allowing for the collection of testimony of witnesses in writing and out of court require agreements between the parties allowing for written testimony of witnesses.

---

[6] Respondents offered the Silva Declaration with their March 1, 2019 Motion for Reconsideration (ECF No. 20). As the Fifth Circuit noted, by refusing to reconsider the *Intel* discretionary factors, the Court improperly failed to take this declaration into consideration in its Order denying Respondents' Motion for Reconsideration. *See* Order (ECF No. 33); *Banca Pueyo SA*, 55 F.4th at 476 ("Pertinent to the second *Intel* factor . . . [Respondents] offered an expert affidavit contrary to that on which the district court predicated its approval of discovery—but the court never took that into consideration").

*See* Silva Decl. ¶¶ 30–33 (ECF No. 30-3). Respondents argue that "because Petitioners' Portuguese party-opponents would not be involved in the requested ex parte depositions, Portuguese tribunals would not be receptive to the requested deposition evidence," and therefore that this factor weighs against granting the Application. Mot. Reconsider 23. Petitioners respond that the second *Intel* factor does not require discovery to be admissible, and further, that by acknowledging two methods under which Portuguese courts *do* accept deposition testimony, Respondents have failed to provide the required "authoritative proof" that the courts would reject the evidence. Resp. 20, 23.

As for the ex parte depositions, the Court agrees with Petitioners that Respondents have not provided authoritative proof that Portuguese courts would be hostile to such evidence gathered with the aid of Section 1782. *LEG Q LLC*, 2017 WL 3780213, at *9. Respondents have shown the Court that there are contexts in which ex parte deposition testimony would be inadmissible in a Portuguese proceeding, and certainly that ex parte depositions are disfavored. In her declaration, Professor Silva explains that depositions taken ex parte are uncommon in Portuguese civil procedure, but may be admissible if all parties agree and other conditions are met. *Id.* at ¶ 31. Professor Silva also explains that in Portuguese proceedings, courts prefer to elicit testimony in person before the judge, to allow the judge to evaluate witness credibility, dismiss irrelevant questions, and deter witnesses from being unfaithful to the facts. *See id.* at ¶ 35, 36.

However, the admissibility of the evidence in Portuguese courts is not the inquiry here—the question is whether Portugal is receptive to U.S. federal-court judicial assistance. *See In re Safra*, 2022 WL 3584541, at *5 (S.D.N.Y. Aug. 22, 2022) ("[A] district court's production-order authority is not limited only to materials that could be discovered in the foreign jurisdiction if the materials were located there . . . such a categorical restriction would undermine Section 1782's objective to assist foreign tribunals in obtaining relevant information that is unavailable under their

own laws") (quoting *Intel*, 542 U.S. at 264). And there is nothing in Professor Silva's declaration or elsewhere in the record "in the form of a judicial, executive, or legislative declaration" suggesting that the Portuguese court would reject evidence produced with the aid of Section 1782(a). *See Eni Ghana Expl. and Prod. Ltd.*, 2022 WL 3156224, at *4. Even if admissibility was the touchstone, Professor Silva notes in her declaration that ex parte deposition testimony *is* admissible in Portuguese courts by agreement of the parties and other conditions. Silva Decl. ¶ 30, 31 (explaining two mechanisms by which witnesses may testify out of court and the requirements for admissibility). In any event, Respondents have pointed to no "clear directive" that Portuguese courts would reject evidence produced in the United States. *See Ecuadorian Plaintiffs*, 619 F.3d at 377. To the contrary, Professor Silva testifies that Portuguese courts would allow the use of a deposition taken in Texas, assuming compliance with the procedural requirements for such evidence and with other evidentiary limitations. *See* Silva Decl. ¶¶ 61–62. This suggests that Portuguese courts may be receptive to evidence produced in the United States in some contexts, or at the least, that the court would not categorically reject such evidence.

Respondent also argues that the Article 23 reservation in Portugal's acceptance of the Hague Evidence Convention signals its unwillingness to accept discovery produced under Section 1782. Mot. Reconsider 23. "In accordance with Article 23, Portugal's acceptance of the Hague Evidence Convention states 'the Portuguese State declares that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in common law countries.'" *Id.* Respondents argue that although this reservation focuses on foreign discovery that parties may conduct in Portugal for use in their own courts, the reservation is evidence of what Portugal deems tolerable to its judicial system. *Id.* at 24 (citing *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S.D. Iowa*, 482 U.S. 522, 530 (1987)). Respondents also point

the Court to a case where the same Article 23 reservation evidenced German courts' non-receptivity to discovery requested under Section 1782. *See Robert Bosch LLC*, 294 F. Supp. 3d at 736. Petitioners respond that the Article 23 reservation does not indicate that Portugal is not receptive to U.S. federal court assistance, and that to the contrary, Portugal has indicated its receptiveness to such aid by entering into additional treaties with the United States allowing the exchange of discovery, specifically allowing the use of materials from the United States in Portuguese civil proceedings. Resp. 24–26.

*Robert Bosch LLC*, the case on which Respondents urge the Court to rely, is distinguishable. There, the court concluded that Germany's Article 23 reservation, among other factors, favored the respondent "at least slightly" on the second *Intel* factor. *Robert Bosch LLC*, 294 F. Supp. 3d at 735–36. In its analysis, the court gave great weight to the fact that the German court had already rejected applicant's claims on the merits. *Id.* at 734. The court also took note of declarations from the respondents explaining that the German legislature had highlighted the risks of pretrial discovery and denied the adoption of a bill that would have allowed the execution of foreign discovery requests under certain circumstances. *Id.* at 735. And although it concluded that this factor "slightly" favored the respondents, the court noted that "neither party [had] painted an entirely clear picture as to receptivity in Germany." *Id.* at 736. Here, the Portuguese courts have not yet decided the discovery disputes on the merits, and the requests for production of documents and information are still pending. *See generally* 2023 Pinheiro Decl. (ECF No. 121-1) (explaining the state of the Retransfer Actions and the Acquisition Actions to date). And Respondents have not pointed to any legislative measures in Portugal similar to those highlighted in the *Robert Bosch LLC* case that signal a skepticism towards U.S. federal court discovery aid.

28

While the Article 23 reservation may indicate Portugal's unwillingness to allow foreign parties to conduct discovery in Portugal, it does not necessarily follow that Portuguese courts are unreceptive to Section 1782(a) assistance. Indeed, as the Supreme Court noted in *Intel*, "a foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts." *Intel*, 542 U.S. at 261. Professor Silva's declaration certainly highlights the differences in how and why Portuguese courts gather and consider evidence. But beyond quoting the language of Article 23, Respondents have not provided authoritative proof or a clear enough directive by which the Court could conclude, without a "speculative foray into [unfamiliar] legal territories," that the Article 23 reservation signals Portugal's unwillingness to accept U.S. federal court aid. *See Ecuadorian Plaintiffs*, 619 F.3d at 378. On balance, this factor favors Petitioners.

### 3. The third discretionary factor favors Petitioners.

The third discretionary factor calls upon the Court to consider "whether the Section 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 254. "[D]istrict courts should not outright deny discovery under Section 1782 solely because such discovery is unavailable in the foreign country," but the court "may consider [foreign] restrictions and whether [the] request is an attempt to thwart those restrictions." *LEG Q LLC*, 2017 WL 3780213, at *10 (quoting *Mees*, 793 F.3d at 303). When the Section 1782(a) request is a clear attempt to avoid the foreign jurisdiction's restrictions, the application should be denied. *See Bush v. Cardtronics, Inc.*, 2020 WL 6261694, at *4–5 (S.D. Tex. Oct. 23, 2020). For example, where an applicant seeks to request documents from a party located in the foreign jurisdiction or avoid a forum selection clause setting the proper forum in the foreign jurisdiction, this factor could weigh against granting the application. *See id.*

(rejecting a Section 1782(a) application where the underlying proceeding was governed by an enforceable forum selection clause reflecting an agreement to litigate in Mexico, the entity from which the applicant sought discovery would be a party to the Mexican litigation, and the applicant continued to seek adjudication of his claim in the United States despite knowing he must bring his lawsuit in Mexico). Similarly, a previous discovery decision in the foreign court denying the applicant access to the requested material may indicate an attempt to circumvent foreign proof-gathering restrictions. *See Eni Ghana*, 2022 WL 31526224, at *5.

Respondents argue that Petitioners are clearly seeking to circumvent Portuguese proof-gathering restrictions by requesting documents via Section 1782(a) that they have already requested in the Portuguese proceedings. Mot. Reconsider 26. According to Respondents, because BdP has produced the required disclosures with redactions, Petitioners are using this Application to "replace" an adverse foreign discovery decision. *Id.* at 26–27. Petitioners respond that they are not seeking any documents that have either already been produced in Portugal or have been redacted on the basis of containing secret or restricted information, and indeed, that this Court has already ruled that Respondents need not produce any such duplicative or redacted information. Resp. 27–28. Therefore, Petitioners argue that this Application is not an attempt to circumvent Portuguese law or replace an unfavorable discovery decision. *Id.*

The parties' various declarations detail the current status of document production in Portugal. Under Portuguese law, every administrative legal action requires the production of an administrative file containing the documents that were taken into consideration by the relevant public entity in reaching its decision. 2019 Duarte Decl. ¶ 7; 2019 Pinheiro Decl. ¶ 7. BdP produced

its administrative file[7] in both the Retransfer Actions and the Acquisition Actions. 2019 Pinheiro Decl. ¶¶ 7, 16. Many of the documents produced in these administrative files were redacted. 2019 Duarte Decl. ¶ 29. While the parties are apparently not on the same page about whether Petitioners have challenged the redactions, *see, e.g.*, 2019 Pinheiro Decl. ¶ 10 ("[P]laintiffs in the Retransfer Annulment Actions have not challenged BdP's redaction of these documents"); 2019 Duarte Decl. ¶ 30 ("Contrary to Mr. Pinheiro's assertions, Petitioners have challenged the BdP's redactions"), the record indicates that the Portuguese court has not yet ruled on whether BdP can permissibly redact the information. 2023 Duarte Decl. ¶ 21. In any event, Petitioners note that "as to documents requested that overlap with documents . . . withheld and redacted on the basis of containing secret or restricted information, Petitioners are not seeking those documents." Resp. 27. Beyond the administrative files, Petitioners have requested additional disclosure of documents from BdP, the Resolution Fund, Novo Banco, and the European Commission. 2019 Pinheiro Decl. ¶ 12. The Portuguese court has not yet made a ruling on whether these documents must be produced. 2023 Pinheiro Decl. ¶¶ 8.iii; 12.i.

Here, there is no conclusive evidence in the record that Petitioners are attempting to improperly circumvent Portuguese proof-gathering restrictions. Respondents argue that "the reason Petitioners seek to circumvent Portugal is that, unlike the U.S., Portugal is a civil law country that has proof-gathering restrictions that severely circumscribe the amount of pre-trial discovery a party may obtain," and "because the discovery Petitioners seek here is within the jurisdictional reach of the Portuguese courts, the Portuguese courts should decide whether to allow discovery of such information." Mot. Reconsider 27. In her declaration, Professor Silva details the

---

[7] Paulo B.M.C. Pinheiro explains the contents of the administrative files in his February 2019 Declaration. *See* 2019 Pinheiro Decl. ¶¶ 7; 16.

procedures for obtaining discovery in Portugal, which are indeed narrower than the procedures in the United States. *See* Silva Decl. ¶¶ 58–60. However, it is not apparent from the record that Petitioners have brought this Section 1782(a) request because they face restrictions in getting the same information through the Portuguese system. Indeed, Petitioners cannot be using this Application to "replace" an unfavorable decision, because the Portuguese courts have yet to issue any decision on whether the documents Petitioners have sought in the Portuguese proceedings should be produced or whether the redactions align with the applicable legal restrictions. *See* 2023 Pinheiro Decl. ¶¶ 8, 12; 2019 Duarte Decl. ¶ 30. In his 2019 declaration, Paulo B.M.C. Pinheiro references a court ruling affirming redactions in a document request by PIMCO before the Retransfer Actions were filed, but the court did not decide whether the redacted information was in fact covered by the applicable legal restrictions. *See* 2019 Pinheiro Decl. ¶ 11.

Nor is there any evidence that Petitioners are attempting to litigate the merits of their case in the United States in violation of a forum selection clause or court decision setting Portugal as the proper forum to conduct discovery. This case is not like the cases Respondents cite, where the applicants had previously received unfavorable discovery decisions before applying for Section 1782(a) aid or the United States was clearly not the appropriate forum to request the discovery. *See In re Eli Lilly and Co.*, 37 F.4th 160, 168 (4th Cir. 2022) (noting that the foreign court had previously rejected discovery motions requesting the same documents); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 195 (S.D.N.Y. 2006) (explaining that the foreign tribunal had expressly cautioned that the applicant's document requests sought to circumvent the established rules of the tribunal); *In re Kreke Immobilien KG*, 2013 WL 5966916, at *6–7 (S.D.N.Y. Nov. 8, 2013) (noting that the applicant was a German petitioner seeking discovery from a German respondent for use against a German defendant in a German proceeding, and that the applicant had assented to foreign authority

by signing a forum selection clause). Here, Petitioners are seeking information from Texas-based Respondents, and there is no forum selection agreement or court decision disapproving of the United States as a forum for discovery.

The Court acknowledges that this factor is a close call. As discussed above in Section II.B.1 *supra*, there is overlap in the discovery requests already pending in the Portuguese proceedings and what Petitioners seek through this Application. But this Court cannot speculate as to whether the Portuguese courts will grant Petitioners' requests for additional discovery under Portugal's civil procedure principles, or whether it will rule that BdP's redactions in the administrative file are permissible. And without evidence of an unfavorable decision from the Portuguese tribunal that Petitioners are clearly seeking to thwart, or an indication that Petitioners are otherwise attempting to avoid Portugal as a forum, the Court in its discretion concludes that on balance, this factor weighs slightly in favor of granting the Application. *LEG Q LLC*, 2019 WL 3780213, at *10 (weighing the third *Intel* factor in applicant's favor where there was no evidence that the foreign jurisdiction would prohibit the use of the Section 1782(a) documentary or deposition evidence to make a prima facie showing, nor evidence that granting the application would contradict the rulings of the foreign jurisdiction); *In re Empresa Publica*, 2020 WL 13412872, at *6 (holding that where the record did not "clearly demonstrate" that the applicant was trying to circumvent any procedures, the third Intel factor did not weigh against granting the application).

4. The fourth discretionary factor favors Petitioners.

Analyzing the final discretionary factor, the Court may "reject[] or trim[]" an unduly intrusive or burdensome request. *Intel*, 542 U.S. at 264. In the Section 1782(a) context, "[a] subpoena is facially overbroad where, for example, it seeks: all documents concerning the parties to the underlying action, regardless of whether those documents relate to that action and regardless

of date; the requests are not particularized; and the period covered by the requests is unlimited." *Eni Ghana Expl. & Prod. Ltd.*, 2022 WL 3156224, at *6 (internal quotations omitted). While the analysis courts apply to this factor appears to track the standards that typically govern discovery requests under the Federal Rules of Civil Procedure, the Court is careful not to conflate the analysis or shift the burden of proof to Respondents, as would be the case in an ordinary motion to quash under the Federal Rules of Civil Procedure. *See Banca Pueyo SA*, 55 F.4th at 475 (commenting that what is undue or burdensome in the Section 1782(a) context is not necessarily identical to the standards that may limit third-party domestic discovery, and that "to obtain § 1782(a) discovery, the applicant must either carry its burden or at least provide sufficient support to persuade the court"); *LEG Q LLC*, 2017 WL 3780213, at *11 ("[t]he intrusiveness and burden of Section 1782 disclosure are evaluated under the same standards that typically govern discovery requests under the Federal Rules of Civil Procedure") (citing *Tex. Keystone*, 694 F.3d at 554 and *Mees*, 793 F.3d at 302).

Throughout their briefing, Respondents echo the Fifth Circuit's caution that discovery should not be "indiscriminately doled out to persons with no interest in a particular proceeding." Reply 12–13. On this factor, Respondents argue that most of the discovery relates to the Acquisition Actions to which Petitioners are not interested parties, and therefore producing such information will be an undue burden because anything Respondents produce will not be usable. Mot. Reconsider 29. Further, Respondents aver that deposition testimony is "almost never admissible in Portuguese courts," and therefore that "the burden imposed by requiring witnesses to sit for such depositions is undue." *Id.* at 30. Petitioners respond that the document requests and deposition topics are relevant to the Retransfer Actions because they "relate to and demonstrate, *inter alia*, the intentionality of the re-transfer, including the marketability after the re-transfer,

disclosures made through due diligence, and information relating to damages." Resp. 29. Petitioners also argue that Portuguese courts can consider deposition evidence as corroboration of other evidence. *Id.* at 32. Finally, Petitioners note that this Court has already conducted a full analysis under Federal Rule of Civil Procedure 45 and limited the document requests and deposition topics accordingly. *See* Orders (ECF Nos. 75 & 88).

First, the subpoenas are not facially overbroad. The subpoenas do not cover an unlimited time period—the instructions instead specify a limited time period beginning on August 1, 2014 through to the present. *See* 2018 Calamari Decl. Ex. 2, at 18, 33; *In re Empresa*, 2020 WL 13412872, at *7. Further, each of the document requests focuses on documents and communications related to the events giving rise to the underlying Portuguese proceedings. *See* Calamari Decl. Ex. 2. Although Respondents contend that Petitioners' requests are overbroad because they seek "any and all documents" relating to any aspect of the Acquisition, the requests and topics for examination are particularized with lists of specific categories of information sought. *See id.* Finally, Petitioners emphasize that they do not seek documents that have already been produced or that have been withheld on the basis of containing secret or restricted information. Resp. 27–28. Respondents therefore will not be burdened by a requirement to produce duplicative documents or documents privileged by foreign law. The volume of documents sought may be high, but the Court finds that the requests are not facially overbroad or burdensome for purposes of the final *Intel* factor. *See In re App. of HydroDive Nigeria Ltd*., 2013 WL 12155021, at *4.

As to Respondents' argument that "the burden of responding to [requests relating to the Acquisition Action] is undue when the evidence demonstrates that any documents or depositions could not be used in any Acquisition Action," Petitioners respond—and the Court agrees—that the discovery is pertinent to all Petitioners because it has potential relevance to the Retransfer Action.

35

Resp. 29. Specifically, Petitioners explain that the discovery "[is] relevant because [it] relate[s] to and demonstrate[s], *inter alia,* the intentionality of the re-transfer, including the marketability after the re-transfer, disclosures made through due diligence, and information relating to damages." *Id.* Any burden involved with responding to Petitioners' requests is therefore not undue, because, as discussed above, the discovery requested has possible relevance for all Portuguese Proceedings. *See* Section II.A.3 *supra.* Further, because all Petitioners are interested persons in the Retransfer Action, granting the application does not risk "countenance[ing] promiscuous availability of discovery[.]" *See Banca Pueyo SA*, 55 F.4th at 476.

Respondents further argue that the burden of taking the requested depositions will be undue because the depositions will not be admissible in the Portuguese proceedings. Mot. Reconsider 24–25. However, evidence sought under Section 1782(a) need not be admissible or discoverable in the foreign tribunal. *LEG Q LLC*, 2017 WL 3780213, *10 (quoting *Mees*, 793 F.2d at 303). Petitioners point out that "even if the deposition is not taken as fact, a Portuguese Proceeding can still consider the evidence as corroboration of other evidence." Resp. 32. Petitioners point to *In re Pidwell* throughout their briefing, a case where a district court in the Southern District of New York granted an applicant's Section 1782(a) application, allowing applicant to conduct discovery including depositions for use in Portuguese legal proceedings while holding that there was no undue burden to the discovery sought. *See In re Pidwell*, 2022 WL 192987, *5–7 (S.D.N.Y. Jan. 21, 2022). Indeed, the Court *supra* analyzed Professor Silva's declaration and determined that there are circumstances whereby deposition testimony may be used in Portuguese proceedings. *See, e.g.*, Silva Decl. ¶ 31; Section II.B.2 *supra*. Considering the parties' arguments, the record, and prior case law allowing deposition testimony as part of a Section 1782(a) application involving Portuguese proceedings, the depositions do not constitute an undue burden in this context.

In exercising its discretion to grant Petitioners' Section 1782(a) Application, the Court emphasizes the unique policy aims of the statute. As the Fifth Circuit explained, "Section 1782 does not establish a standard for discovery. Instead, it provides for a threshold determination of whether to allow foreign litigants to enjoy discovery in U.S. courts in accordance with federal rules." *Tex. Keystone*, 694 F.3d at 554 (quoting *Gov't. of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 343 (8th Cir. 2012)). In other words, "[t]he Section 1782 screen . . . is designed for preventing abuses of the right to conduct discovery in a federal district court for use in a foreign court." *Id*. (quoting *Heraeus Kulzer, GmbH v. Biomet, Inc*., 633 F.3d 591, 597 (7th Cir. 2011)). Having "thoroughly vetted" the parties' arguments and evidence, the Court is satisfied that Petitioners' Application is not aimed at abusing the right to conduct discovery in the United States and exercises its discretion to deny the Motion for Reconsideration and grant Petitioners' Application. As the parties acknowledge, the Court has already issued final Orders as to Respondents' Rule 45 challenges to the subpoenas and limited the discovery requests accordingly.

Conclusion

The Court DENIES Respondents' Motion to Reconsider and ORDERS Respondents to respond to Petitioners' request for discovery under Section 1782(a), as modified by the Court.

SO ORDERED.

Signed April 24, 2024.

BARBARA M. G. LYNN
SENIOR UNITED STATES DISTRICT JUDGE

37